UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTIAN JOHN BROWN,

Plaintiff,

v.

UNKNOWN PAPE, et al.,

Defendants.

Case No. 1:26-cv-483

Honorable Phillip J. Green

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (Compl., ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . ." 28

U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim for the reasons detailed below.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains, however, occurred at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. Plaintiff sues Calvin University Professor Todd Cioffi and the following MTU staff: Correctional Officer Unknown Pape, Assistant Deputy Warden/Captain Unknown Smith, Sergeant Unknown McLaren, Resident Unit Manager Unknown Bandt, and Hearings Investigator Unknown Lake.

Plaintiff alleges that, on September 7, 2025, Defendants Pape and McLaren and non-party Officer Myers falsely accused Plaintiff of being "under the influence." (Compl., ECF No. 1, PageID.3.) Defendants Pape and McLaren and Officer Myers required that Plaintiff sit in the wheelchair, incorrectly claiming that it was required procedure, and took Plaintiff to the A-Unit. (*Id.*)

Once in A-Unit, Defendant McLaren administered a drug test to Plaintiff without sealing the urine cup in front of Plaintiff, and told Plaintiff, "This is for those grievances." (*Id.*, PageID.10.) Defendant McLaren then took Plaintiff to segregation for "observation" where he took Plaintiff's clothes and made Plaintiff wear a gown. (*Id.*, PageID.6.) The observation cell was "dirty" with both windows open and no covers on the bed. (*Id.*) Plaintiff alleges that he was "freezing the whole night." (*Id.*)

The following day, September 8, 2025, Defendant McLaren took Plaintiff to be reviewed on a Class I Misconduct report for substance abuse. (*Id.*, PageID.11; Misconduct Report, ECF No. 1-1, PageID.15.) Defendant McLaren told Plaintiff to "hurry up" or he would say that Plaintiff refused to sign the ticket. (*Id.*)

Plaintiff received a Class I Misconduct report for substance abuse, which Plaintiff claims was false. (Compl., ECF No. 1, PageID.6–7; Misconduct Report, ECF No. 1-1, PageID.15.) Plaintiff alleges that no substances were ever found. (Compl., ECF No. 1, PageID.3.) Plaintiff also claims that, on a separate occasion, Defendant Pape noticed a Caucasian inmate "actually high," and found a bag of alcohol in the inmate's cell but only dumped the bag out without issuing a misconduct report (*Id.*, PageID.7.)

When Plaintiff returned to his cell, Plaintiff noticed that "they" allowed Plaintiff's cellmate to keep most of Plaintiff's property. (*Id.*, PageID.7.)

On September 12, 2025, Defendants Cioffi and Smith met with Plaintiff and "abruptly kicked [Plaintiff] out" of the Calvin University Prisoner Initiative Program (CPI Program) because of the false Class I Misconduct. (*Id.*, PageID.3, 7–8.) Defendant Cioffi told Plaintiff, "We don't want you in Calvin anyway, you're a Muslim." (*Id.*, PageID.11.) Plaintiff alleges that a white student was caught with multiple substances and was not kicked out of the CPI Program. (*Id.*, PageID.8.)

Plaintiff alleges that, after being removed from the CPI Program, Defendant Bandt and non-party Officer Griffith moved Plaintiff to B-Unit because they did not know what Plaintiff would do to his cellmate. (*Id.*) On three occasions, Defendant

Bandt placed Plaintiff "with guys that are not supposed to have bunkies," including one prisoner that Defendant Bandt knew to be homicidal. (*Id.*)

Plaintiff's mother called Defendant Bandt to ask why Plaintiff had been placed with different inmates and moved. (*Id.*, PageID.10.) Plaintiff claims that, after these calls, Plaintiff faced "verbal abuse" and that Defendant Bandt called Plaintiff's mother a "nagging henchmen" and told Plaintiff that she would continue to make Plaintiff "pay." (*Id.*)

On September 29, 2025, a hearing was held on Plaintiff's Class I Misconduct charge. (*Id.*, PageID.8.) Defendant Lake told the Administrative Law Judge (ALJ) that Plaintiff's questions were not relevant, and that Plaintiff's due process rights had not been violated. (*Id.*, PageID.9.) The ALJ agreed. (Misconduct Hearing Report, ECF No. 1-2, PageID.16.) However, at the conclusion of the hearing, the ALJ dismissed the charge "due to the lack of proper effective communication documentation for the review and re-review." (*Id.*) Nonetheless, the things that Plaintiff lost as a result of the charge, including the opportunity to participate in the Program, his personal property, and his "unit garden," were not restored. (Compl., ECF No. 1, PageID.9.)

Based on the foregoing allegations, Plaintiff seeks monetary compensation. (*Id.*, PageID.4.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355

U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive

rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Defendant Cioffi**

Plaintiff sues Professor Cioffi of Calvin University. Even if Plaintiff could show that Defendant Cioffi engaged in any wrongful conduct, Plaintiff fails to plead facts that would demonstrate that Defendant Cioffi was a state actor for purposes of § 1983.

As set forth above, to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and *must show that the deprivation was committed by a person acting under color of state law*. *West*, 487 U.S. at 48. For a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814. There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

"Three tests determine whether challenged conduct is fairly attributable to the state: (1) the public-function test; (2) the state-compulsion test; and (3) the symbiotic-relationship or nexus test." *Brown v. Cioffi*, No. 24-1168, 2024 WL 5440982, at *2 (6th Cir. Oct. 10, 2024) (citing *Wilcher v. City of Akron*, 498 F.3d 516, 519 (6th Cir. 2007)). Here, Plaintiff has not alleged any facts that would suggest that the conduct of Defendant Cioffi could be fairly attributed to the state.

First, the public function test covers private actors performing functions "traditionally the exclusive prerogative of the State." *Jackson*, 419 U.S. at 353; *accord West*, 487 U.S. at 49–50. *See generally*, *Lugar*, 457 U.S. at 936–39 (discussing three tests). However, as the Sixth Circuit previously held, "the services provided by CPI and Calvin University in this case, a college scholarship and higher education for a select few prisoners, is not a service that is traditionally provided by the State." *Brown*, 2024 WL 5440982 at *3.

Second, the state compulsion test describes situations "in which the government has coerced or at least significantly encouraged the action alleged to violate the Constitution." *NBC v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1026 (11th Cir. 1988); *accord Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970). However, the fact that Defendants Cioffi and Smith met with Plaintiff together to inform Plaintiff that he was being dismissed from the CPI Program is insufficient to plausibly suggest that "the state 'exercise[d] such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" *Brown*, 2024 WL 5440982 at *3 (quoting *Wilcher*, 498 F.3d at 519).

Third, in the symbiotic relationship test, or nexus test, the inquiry focuses on whether "the State had so far insinuated itself into a position of interdependence with the [private party] that it was a joint participant in the enterprise." *Jackson*, 419 U.S. at 357–58. However, here, as in the Sixth Circuit case of *Brown*, Plaintiff has not alleged facts that would suggest that "there is a sufficiently close nexus between

the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Brown*, 2024 WL 5440982 at *3 (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). Indeed, Plaintiff has not alleged any facts concerning the relationship between the state and Calvin University.

In short, because Plaintiff failed to allege sufficient facts showing that Defendant Cioffi is a state actor for purposes of § 1983, Plaintiff's claims against Defendant Cioffi will be dismissed.

**B. First Amendment Retaliation Claims**

Plaintiff alleges that, after Defendants Pape and McLaren woke Plaintiff up in his cell, accused Plaintiff of using illicit substances, and Defendant McLaren took Plaintiff to segregation, Defendant McLaren told Plaintiff, "This is for those grievances." (Compl., ECF No. 1, PageID.10.) Plaintiff also alleges that, after Plaintiff's mother called Defendant Bandt to ask why Plaintiff had been placed with different inmates and moved multiple times, Defendant Bandt called Plaintiff's mother a "nagging henchmen" and stated that she would continue to make Plaintiff "pay." (*Id.*) The Court will construe these allegations as raising claims of First Amendment retaliation.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from

engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Assuming but not deciding at this early stage of the litigation that Plaintiff's "grievances" were First Amendment protected activity, the Court will allow Plaintiff to proceed with his First Amendment claim against Defendants McLaren and Pape. However, with respect to Plaintiff's claims against Defendant Bandt, regardless of whether Plaintiff engaged in protected activity, Plaintiff has not alleged that Defendant Bandt took any adverse action against Plaintiff following Plaintiff's mother's telephone calls and Defendant Bandt's statement that she would make Plaintiff "pay." Accordingly, Plaintiff has not alleged sufficient facts to state a First Amendment retaliation claim against Defendant Bandt.

Finally, to the extent that Plaintiff seeks to bring First Amendment retaliation claims against any other Defendant, Plaintiff does not allege sufficient facts to plausibly suggest that any other named Defendant shared the purported motivation to retaliate against Plaintiff "for those grievances." (Compl., ECF No. 1, PageID.10.)

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*,

598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x. 579, 579–80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Here, Plaintiff has not alleged any *facts* that would plausibly suggest that any other named Defendants knew of Plaintiff's grievances, let alone that they were motivated to act by Plaintiff's First Amendment protected conduct. Accordingly, the Court will dismiss any additional claims of First Amendment retaliation.

### C. Fourteenth Amendment Due Process Claims

#### 1. Deprivation of Property

Plaintiff alleges that Defendants played a role in allowing Plaintiff's cellmate to take Plaintiff's personal property. These claims will be liberally construed as claims for violation of Plaintiff's Fourteenth Amendment right to due process. However, any such due process claims will be dismissed as barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim

unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

The Court notes that numerous state post-deprivation remedies are available to Plaintiff. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Nov. 13, 2023). Second, aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective May 20, 2024). And third, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480.

Here, Plaintiff does not claim that his state post-deprivation remedies are inadequate. Accordingly, the Court will dismiss Plaintiff's Fourteenth Amendment claims concerning the deprivation of his personal property.

**2. Equal Protection Claims**

Plaintiff claims that Defendant Pape treated Plaintiff differently than a white inmate. Specifically, Plaintiff alleges that Defendant Pape noticed a white inmate "actually high," and found a bag of alcohol in the inmate's cell but only dumped the bag out without issuing the inmate a misconduct report. (Compl., ECF No. 1, PageID.7.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff's complaint does not provide the Court with sufficient facts to suggest that the white inmate was similarly situated to Plaintiff in all material respects. Accordingly, Plaintiff's equal protection claim will be dismissed.

#### 3. Misconduct Charges

Plaintiff claims that he was issued a false Class I Misconduct charge for substance abuse, which was ultimately dismissed after a hearing before an ALJ. Plaintiff claims that he was denied due process in connection with that charge.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir.

1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff states that Defendant McLaren issued Plaintiff a false Class I Misconduct charge for substance abuse, that Plaintiff was placed in segregation for a day before being released pending a hearing, that Defendant Lake told the ALJ that Plaintiff's questions were not relevant, and that the ALJ ultimately dismissed the charge. As explained below, Plaintiff fails to state a Fourteenth Amendment due process claim regarding his receipt of this misconduct charge and his placement in segregation.

As an initial matter, the Class I Misconduct charge for substance abuse was dismissed. Therefore, Plaintiff did not receive any sanctions for a misconduct conviction. Under these circumstances, Plaintiff necessarily fails to show that he received any sanctions that impacted the duration of his sentence or constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87. Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to

him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original) (citations omitted)).

Further, as to Plaintiff's placement in segregation and later transfer to a new unit, the United States Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). And one day in segregation is certainly not an "atypical and significant hardship." *See, e.g.*, *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant).

Accordingly, for each of the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment due process claim concerning his Class I Misconduct charge.

**4. Removal from the CPI Program**

Plaintiff also appears to bring a due process claim related to his dismissal from the CPI Program. However, as the Sixth Circuit has previously held, a prisoner has no due process right to participation in the CPI Program, *Brown*, 2024 WL 5440982, at *4 ("Brown has no constitutional right to or liberty interest in educational classes as a prisoner."). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Id.* (quoting *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007). Therefore, the Court will dismiss Plaintiff's due process claims concerning his dismissal from the CPI Program.

**5. Violation of MDOC Policy**

Plaintiff also alleges that Defendants violated MDOC policy. To the extent that Plaintiff's Fourteenth Amendment claim may be construed as a claim for violation of MDOC policy, Plaintiff's assertions fail to state a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar*, 457 U.S. at 924. Section 1983 does not provide redress for a violation of state law or prison policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). Additionally, courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim*, 461 U.S. at 250; *Laney*, 501 F.3d at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th

Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Accordingly, the Court will dismiss any § 1983 claims premised upon violations of MDOC policy and procedure.

**D. Eighth Amendment Claims**

Plaintiff claims that Defendants verbally harassed him and that he was placed in a dirty and cold segregation cell for one night. The Court will construe Plaintiff's allegations as raising Eighth Amendment claims of unconstitutional conditions of confinement.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders

pay for their offenses against society.'" *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.

The Sixth Circuit has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (noting that "[v]erbal harassment or idle threats by a state actor do not create

a constitutional violation and are insufficient to support a section 1983 claim for relief" (citing *Ivey*, 832 F.2d at 955)); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (affirming district court's conclusion that verbal harassment in the form of a threatened sexual assault "was not punishment that violated Miller's constitutional rights" (citing *Ivey*, 832 F.2d at 955)); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree.").

Moreover, a dirty and cold cell without blankets for a single night, while unpleasant does not state an Eighth Amendment claim. In *Taylor v. Riojas*, 141 S. Ct. 52 (2020), the Supreme Court reiterated that "extreme" unsanitary conditions are required to satisfy the objective component of an Eighth Amendment claim. *Id.* at 52 (describing "shockingly unsanitary" conditions including confinement in a cell that was "covered, nearly floor to ceiling, in 'massive amounts' of feces' all over the floor, the ceiling, the window, the walls, and even 'packed inside the water faucet.'") On the other hand, temporary inconveniences or discomforts less extreme than in *Taylor* are insufficient to warrant constitutional concern. *See, e.g., Grissom v. Davis*, 55 F.App'x 756, 757-58 (6th Cir. 2003) (seven-day period where inmate was not given mattress, blanket, or sheets did not deprive her of basic human needs or cause her to suffer serious harm); *Wells v. Jefferson Cnty. Sheriff Dep't*, 35 F. App'x 142, 143 (6th Cir. 2002) (sleeping on a mattress on the floor in a cold cell for six days was not a

constitutional violation); *Perkins v. Bailey*, 2021 WL 868887, at *9 (W.D. Mich. Mar. 9, 2021) (holding that allegations of dirty cell conditions over a two-week period fell "well short of meeting the objective component of the Eighth Amendment standard."); *Glover v. Grant Cty. Det. Ctr.*, No. 10-00088-DLB, 2010 WL 2804054, at *4 (E.D. Ky. July 15, 2010) ("[T]hese short durations of cold conditions [between February 2-5, 2010 and "for 2½ days later that month"] fail to amount to a serious deprivation of the minimal civilized measure of life's necessities."); *Clark v. Spey*, No. 01-C-9669, 2002 WL 31133198 (N.D. Ill. Sept. 26, 2002) (finding inmate held overnight in cold cell with no toilet did not state a claim). Ultimately, "conditions-of-confinement cases are highly fact-specific, but one guiding principle is that the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) ("In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001))).

Here, Plaintiff does not describe the conditions of his cell, let alone alleges facts that would indicate that he was exposed to freezing or deplorable conditions for a lengthy period of time. Plaintiff also does not describe that he faced any risk to his health or safety due to the conditions of his cell or that any named Defendant was subjectively aware of such a risk. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claims.

**Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the PLRA, the Court determines that Defendants Smith, Cioffi, Bandt, and Lake will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth and Fourteenth Amendment claims against remaining Defendants Pape and McLaren. Plaintiff's First Amendment retaliation claims against Defendants Pape and McLaren remain in the case.

An order consistent with this opinion will be entered.

Dated: September 23, 2026

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge